1
2
3
4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6
DAMIAN DONALD SMITH,

7
                                  Plaintiff,

8
        v.

9
NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

10
                                  Defendants.

Case No. 3:16-cv-05965-TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

11
12
        Damian Donald Smith has brought this matter for judicial review of the Commissioner of

13
Social Security's denial of his application for supplemental security income (SSI) benefits. The

14
parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C.

15
§ 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth

16
below, the Court finds that defendant's decision to deny benefits should be reversed and that this

17
matter should be remanded for an award of benefits.

                                FACTUAL AND PROCEDURAL HISTORY

18
        On March 18, 2011, Mr. Smith filed an application for SSI benefits, alleging that he

19
became disabled beginning August 21, 2006. Dkt. 12, Administrative Record (AR) 888. That

20
application was denied on initial administrative review, on reconsideration, and after a hearing

21
before an administrative law judge (ALJ). *Id.* On review, this Court found the ALJ erred in

22
considering the medical evidence and remanded for further proceedings. In July 2014, Mr. Smith

23
filed a second SSI claim, which the Commissioner consolidated with Mr. Smith's earlier claim.

24
25

1   *Id.* Another hearing was held before a different ALJ in February 2016, at which Mr. Smith

2   appeared and testified, as did a vocational expert. AR 920-57.

3       In a written decision in August 2016, the ALJ found that Mr. Smith could perform jobs

4   existing in significant numbers in the national economy and therefore was not disabled. AR 907-

5   08. It appears that the Appeals Council did not assume jurisdiction of the matter, making the

6   ALJ's decision the Commissioner's final decision, which Mr. Smith then appealed in a

7   complaint filed with this Court on November 18, 2016. Dkt. 3; 20 C.F.R. § 416.1481.

8       Mr. Smith seeks reversal of the ALJ's decision and remand for an award of benefits, or in

9   the alternative for further administrative proceedings, arguing the ALJ erred:

10      (1)    in evaluating the medical evidence;

11      (2)    in discounting Mr. Smith's subjective claims; and

12      (3)    in assessing Mr. Smith's residual functional capacity (RFC).

13  For the reasons set forth below, the Court finds that the ALJ erred in evaluating the medical

14  opinion evidence from Dr. Terilee Wingate, Dr. Jennifer Irwin, and Dr. Vincent Phillips and in

15  discounting Mr. Smith's subjective claims regarding his physical symptoms, and therefore in

16  assessing Mr. Smith's RFC and in finding Mr. Smith not disabled. Accordingly, the Court finds

17  that the decision to deny benefits should be reversed. Additionally, the Court finds that this case

18  satisfies all three "credit-as-true" factors and should therefore be remanded for an award of

19  benefits.

20                                      DISCUSSION

21      The Commissioner employs a five-step "sequential evaluation process" to determine

22  whether a claimant is disabled. 20 C.F.R. § 416.920. If the ALJ finds the claimant disabled or not

23  disabled at any particular step, the ALJ makes the disability determination at that step and the

24  sequential evaluation process ends. *See id*. At issue here are the ALJ's weighing of different

25

1    pieces of medical evidence, her evaluation of Mr. Smith's subjective claims, and her resulting

2    assessment of Mr. Smith's RFC and conclusion at step five that Mr. Smith could perform jobs in

3    the national economy.

4         This Court affirms an ALJ's determination that a claimant is not disabled if the ALJ

5    applied "proper legal standards" in weighing the evidence and making the determination and if

6    "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*,

7    785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is "'such relevant evidence as a

8    reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, No.

9    15-16277, ⸺ F.3d ⸺, 2017 WL 2925434, at *7 (9th Cir. July 10, 2017) (quoting

10   *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires

11   "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting

12   *Desrosiers*, 846 F.2d at 576).

13        This Court will thus uphold the ALJ's findings if "inferences reasonably drawn from the

14   record" support them. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir.

15   2004). If more than one rational interpretation can be drawn from the evidence, then this Court

16   must uphold the ALJ's interpretation. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

17   I.  The ALJ's Evaluation of the Medical Opinion Evidence

18        The ALJ is responsible for determining credibility and resolving ambiguities and

19   conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where

20   the evidence is inconclusive, "'questions of credibility and resolution of conflicts are functions

21   solely of the [ALJ].'" *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (quoting *Waters v.

22   Gardner*, 452 F.2d 855, 858 n. 7 (9th Cir. 1971)). In such situations, "the ALJ's conclusion must

23   be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).

24   Determining whether inconsistencies in the evidence "are material (or are in fact inconsistencies

25

1   at all) and whether certain factors are relevant to discount" medical opinions "falls within this

2   responsibility." *Id.* at 603.

3           In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

4   "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can support

5   his findings "by setting out a detailed and thorough summary of the facts and conflicting clinical

6   evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw

7   inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court

8   itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v.*

9   *Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

10          The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

11  opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

12  1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can

13  only be rejected for specific and legitimate reasons that are supported by substantial evidence in

14  the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or

15  her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation

16  omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence

17  has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield*

18  *v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

19          In general, more weight is given to a treating physician's opinion than to the opinions of

20  those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need

21  not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and

22  inadequately supported by clinical findings" or "by the record as a whole." *Batson*, 359 F.3d at

23  1195; *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*,

24

25

242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Lester*, 81 F.3d at 830s-31; *Tonapetyan*, 242 F.3d at 1149.

A.    Examining Physician: Dr. Wingate

Dr. Wingate evaluated Mr. Smith in December 2010. Dr. Wingate recorded that Mr. Smith was taking numerous medications for depression, pain, and other medical issues. AR 621. She observed that Mr. Smith had a depressed mood, including sad feelings, difficulty sleeping, and suicidal ideation, which she opined would have a severe effect on work activities. AR 622. She also observed anxiety, personality disorder, and intrusive thoughts, each with a marked effect on work activities. AR 622. Dr. Wingate recorded Mr. Smith's report on his daily life: He lives with his mother and stepfather; shops for groceries and makes dinner; watches TV; helps with chores when he has the energy; sometimes reads newspapers and magazines; tries to fix items he finds at Goodwill; has no contact with friends and only occasionally goes to Alcoholic Anonymous meetings; and showers once per week. AR 623. Dr. Wingate performed a mental status exam and found that Mr. Smith's mood and affect were dysphoric and blunted; his speech was halting; he had suicidal ideation, but no plan; and his memory and other measures were mostly normal. AR 626.

Dr. Wingate diagnosed Mr. Smith with major depressive disorder, recurrent, severe; post traumatic stress disorder; alcohol dependence, in remission; and borderline personality disorder. AR 622-23. She opined that, because of his anxiety and anger, Mr. Smith was markedly limited in his ability to interact with the public or communicate and perform in a work setting with limited public contact. She also opined that, because of his difficulty interacting or sustaining a

1  schedule due to anxiety and depression, Smith was markedly limited in his ability to maintain

2  appropriate behavior in a work setting. AR 623-24.

3  　　The ALJ gave "[l]ittle weight" Dr. Wingate's 2010 opinion. She reasoned that the opinion

4  was "inconsistent with the claimant's ability to live with others, go to AA meetings, and go

5  shopping." She stated that Dr. Wingate's opinion was "also inconsistent with Dr. Wingate's

6  observations that the claimant's attitude was cooperative and the claimant's limited treating

7  record at the time of her evaluation." And the ALJ found that some symptoms Mr. Smith

8  reported to Dr. Wingate—"such as intrusive thoughts of traumas and being hyper-vigilant and

9  fearful"—did not match his reports of symptoms elsewhere in the record.

10 　　None of these is a specific and legitimate reason to reject Dr. Wingate's opinion, and the

11 record does not support them.

12 　　First, the record does not support the ALJ's suggestion that Mr. Smith's "ability to live

13 with others, go to [Alcoholics Anonymous (AA)] meetings, and go shopping" contradicts the

14 limitations in Dr. Wingate's opinion. Where an ALJ rejects a medical opinion as inconsistent

15 with a claimant's activities, the record must contain "specific details" about the nature,

16 frequency, and/or duration of those activities that would indicate they are actually inconsistent

17 with the opinion. *Trevizo*, 2017 WL 2925434, at *8. Mr. Smith lives with his mother and

18 stepfather. AR 1222. The ALJ points to nothing indicating that this fact is inconsistent with Dr.

19 Wingate's opinion that Mr. Smith's depression, anxiety, and anger markedly limit his ability to

20 perform in a work setting. The ALJ likewise provided no details about Mr. Smith's shopping that

21 would contradict Dr. Wingate's opinion. The only shopping apparent in the record comprises

22 occasional trips to the grocery store and to Goodwill. *See* AR 623, 1167. And Mr. Smith told Dr.

23 Wingate that he attended AA "only occasionally." AR 623. Again, neither the ALJ nor the

24

25

ORDER - 6

1   Commissioner explain how such activities contradict Dr. Wingate's opinion that Mr. Smith could

2   not interact appropriately with the public or coworkers in a full-time job. *See Trevizo*, 2017 WL

3   2925434, at *8.

4          Second, the ALJ's statement that Dr. Wingate's opinion was inconsistent with her own

5   observations is also unsupported. An ALJ cannot rely on a conclusory statement that a doctor's

6   opinion was inconsistent with his or her own treatment notes, but must point to notes that

7   actually contradict the doctor's opinion. *Trevizo*, 2017 WL 2925434, at *8. The only observation

8   that the ALJ pointed to here was that Mr. Smith was "cooperative" toward Dr. Wingate. AR 904;

9   *see* AR 626. But the ALJ appeared to "cherry pick" that neutral finding from a number of notes

10  indicating mental health problems, including slow mental processing, halting speech, irritability,

11  frustration, and anger. *See* AR 622, 626; *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014)

12  ("[T]he ALJ improperly cherry-picked some of [the doctor's] characterizations of [the claimant's]

13  rapport and demeanor instead of considering these factors in the context of [the doctor's]

14  diagnoses and observations of impairment.") (citations omitted). Moreover, the ALJ did not

15  explain how Mr. Smith's ability to cooperate with Dr. Wingate in an hour-long appointment

16  indicates that he cannot be impaired in working with others at a full-time job.

17         Finally, the ALJ's statement that Dr. Wingate's opinion was inconsistent with Mr.

18  Smith's own reports is also unsupported. It is unclear what inconsistent records the ALJ was

19  referring to. AR 904. Dr. Daniel Neims's evaluation—the only record the ALJ cited in rejecting

20  Dr. Wingate's opinion—did not include any report from Mr. Smith that would contradict his

21  reports to Dr. Wingate that he had intrusive thoughts and felt hyper-vigilant and fearful. AR 563-

22  74. And even if it did, the ALJ rejected Dr. Neims's opinion on the basis that it "predates the

23  application day by over a year." AR 903.

24

25

ORDER - 7

1    At a November 2013 evaluation with Dr. Wingate, Mr. Smith reported similar symptoms

2    of depression/mania, anxiety, attention/concentration problems, and personality disorder. AR

3    1222-23. Dr. Wingate observed in a mental status examination that Mr. Smith spoke slowly with

4    a latent response, appeared depressed with a blunted affect, showed slow mental functioning, and

5    had memory trouble. AR 1225-26. Similar to his 2010 opinion, Dr. Wingate opined that Mr.

6    Smith was markedly limited in being able to attend to a workplace schedule, learn new tasks,

7    perform routine tasks without special supervision, adapt to changes in routine work setting,

8    complete a normal workday with interruptions from his psychological symptoms, or maintain

9    appropriate behavior in a workplace. AR 1224.

10    The ALJ gave this opinion "little weight," as well. AR 904. As with Dr. Wingate's 2010

11    opinion, however, none of the ALJ's reasons are specific, legitimate, and supported by the

12    record.

13    First, the ALJ explained that Mr. Smith's "presentation during her mental status exam

14    and his reports of symptoms are not reflected in his treating notes and do not represent the

15    claimant's overall functioning." The ALJ gave as an example Dr. Wingate's assessment that Mr.

16    Smith had slowed mental functioning, which the ALJ reasoned was belied by Mr. Smith's

17    appearing attentive to questions and reporting that he felt "excited about [his] life" at an

18    appointment in August 2012 and appearing "alert and actively engaged" at an appointment in

19    November 2012. AR 702, 788. But the record as a whole does not support the ALJ's conclusion

20    that Dr. Wingate's assessment was inconsistent with Mr. Smith's treatment notes. Rather, the

21    rest of those notes support Dr. Wingate's conclusions and suggest that the ALJ selected atypical

22    observations. *See Ghanim*, 763 F.3d at 1164; *see, e.g.*, AR 738, 745, 758 (Mr. Smith unsettled

23

24

25

and inattentive, uncommitted to therapy, unable to focus, hard to understand); AR 756 (nonlinear and disorganized); AR 743 (exhibiting memory issues).

Second, the ALJ stated that Mr. Smith's reports to Dr. Wingate were unreliable. The ALJ found that Mr. Smith's statements in early 2013—that he had spent four hours "cleaning some rugs," and that he planned to walk to relieve his stress—contradicted his reports to Dr. Wingate "that he walks with a cane and is not able to do any work physically." *See* AR 1425, 1428. But the record does not indicate what type of physical activity cleaning the rugs required, Mr. Smith did it for only four hours, and this is the only such instance the record includes. AR 1428; *see Trevizo*, 2017 WL 2925434, at *8. Moreover, Mr. Smith reported "he was in a lot of pain" the next day. AR 1428. It was not reasonable for the ALJ to conclude from this that Mr. Smith had the ability to perform for 40 hours per week a job that requires physical activity. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Likewise, the ALJ could not reasonably conclude that Mr. Smith being able to walk—much less stating a desire to walk, with no indication of how far or with what restrictions—contradicted his reports that he could not perform physical work and walked with a cane. *See* AR 1425. Other items in the record indicate that Mr. Smith did walk with a cane. *See* AR 663.

Finally, the ALJ found that Mr. Smith's treatment notes were inconsistent with the score of 33 that he received on the Beck Anxiety Inventory (BAI) (indicating marked to severe anxiety). AR 904; *see* AR 1223, 1228. The ALJ observed that instead "notes show [Mr. Smith] as attentive, comfortable, calm, cooperative and pleasant," and that the claimant told his counseling group in August 2012, "I have a pretty even personality unless I'm using drugs and drinking then it's all bad." AR 790, 832, 838, 842, 844, 845. The ALJ did not explain why Mr. Smith's isolated and vague statement about himself to a therapy group would be entitled to

1    greater weight than an examining doctor's opinion based on clinical observations. Moreover, the

2    ALJ appears to have cherry picked positive treatment notes while ignoring those that

3    corroborated Dr. Wingate's anxiety diagnosis. *See, e.g.*, AR 744 ("sense of impending doom"),

4    746 ("closed off"), 748 (high anxiety), 749 (not sleeping), 751 (hopelessness), 758 ("neurotic,

5    anxious energy"). To the extent the treatment notes show Mr. Smith's symptoms waxing and

6    waning, that is not a sufficient basis to reject Dr. Wingate's anxiety diagnosis, let alone her entire

7    opinion. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("[I]t is error to reject a

8    claimant's testimony merely because symptoms wax and wane in the course of treatment.").

9    B.    Examining Physician: Dr. Irwin

10        Dr. Irwin examined Mr. Smith in June 2011. AR 507-11. She performed a mental status

11    examination, observing that Mr. Smith was cooperative; that he held his head at an angle and

12    hugged himself during the examination; that he displayed excessive storytelling, halting speech

13    (which she attributed to either pain or psychomotor slowing), and suicidal ideation; and that his

14    mood was guarded and his affect restricted. AR 509-10. Mr. Smith told Dr. Irwin he isolated

15    himself, shopped only late at night, bathed if he smelled, and did some fishing, camping, and

16    gardening. AR 507, 509. He added, though, that he generally lacked energy.

17        Dr. Irwin diagnosed Mr. Smith with "Major Depressive Disorder, recurrent, moderate,

18    with psychotic features"; pain disorder; degenerative disk disease; and chronic pain. AR 510.

19    She marked Mr. Smith at 50 of 100 on the global assessment of functioning (GAF), citing

20    suicidal ideation, isolation, and other significant symptoms. AR 511. That score indicates serious

21    impairment in social and occupational functioning. *England v. Astrue*, 490 F.3d 1017, 1023, n.8

22    (8th Cir. 2007). Dr. Irwin opined that Mr. Smith was markedly limited in his ability to maintain

23    regular attendance at work and severely limited in his abilities to complete a work day and week

24    without interruption from psychiatric symptoms and to tolerate workplace stresses. *Id.*

25

1    This Court remanded the prior ALJ's decision to deny disability in part because that ALJ

2    incorrectly determined that Dr. Irwin based her opinion primarily on Mr. Smith's self-reported

3    symptoms and "failed to specify anything from the 'longitudinal medical evidence' that conflicts

4    with Dr. Irwin's findings regarding [Mr. Smith's] functional limitations." AR 1004-05.

5          The ALJ on remand again assigned "[l]ittle weight" to Dr. Irwin's opinions. AR 905. She

6    found that "the longitudinal view" of Mr. Smith's condition contradicted Dr. Irwin's findings. In

7    particular, the ALJ noted: First, Mr. Smith's "presentation at examinations with treating

8    providers;" second, "his ability to make and attend appointments on a regular basis," and third,

9    "*most significantly* his activities as detailed throughout the record," which included "fishing,

10   driving[,] attending multiple appointments, including participating in group activities, and going

11   out with his brother." *Id.* (emphasis added). The ALJ further noted that Mr. Smith's

12   "presentation at the one-time examination is inconsistent with his ongoing presentation" as

13   shown in his treatment notes, in particular a note by one of Mr. Smith's providers at Sea Mar

14   "who believed he had some secondary gain issue and, further, was not disabled as to mental

15   health diagnosis." AR 755-56, 905.

16         None of these observations provides a specific and legitimate reason to reject Dr. Irwin's

17   opinions.

18         The ALJ's general reference to Mr. Smith's "presentation at examinations" was not

19   specific enough to discount an examining doctor's opinion based on a review of his record and

20   her own clinical observations. If the ALJ was referring to the notes she cited in rejecting Dr.

21   Wingate's opinions—that Mr. Smith was at various times alert, cooperative, and calm—that

22   reason fails here for the reasons discussed above: the record shows that Mr. Smith's symptoms

23   waxed and waned, and the ALJ cannot improperly cherry pick the notes in the record that

24

25

1    contradict an examining doctor's opinions while ignoring the notes that support those opinions.

2    *See Ghanim*, 763 F.3d at 1164.

3          Moreover, the record shows that Mr. Smith's attendance at appointments was spotty. *See,*

4    *e.g.*, AR 742, 750, 752, 757 (cancelled appointments). The ALJ's reasoning about Mr. Smith's

5    ability to attend appointments was thus unsupported.

6          Also, as noted above, for a claimant's daily activities to contradict an examining

7    physician's opinions on limitations, the record must contain details about those activities, such as

8    their duration, frequency, and what actions or abilities they involve. *Trevizo*, 2017 WL 2925434,

9    at *8.   Despite citing Mr. Smith's activities as the "most significant[ ]" reason to reject Dr.

10   Irwin's opinions, the ALJ did not meet this standard here. The ALJ cited "fishing, driving[,]

11   attending multiple appointments, including participating in group activities, and going out with

12   his brother." AR 905. Mr. Smith testified to fishing one to two times per week for two to three

13   hours, depending on his arm pain. AR 936. The ALJ cited no details regarding Mr. Smith's

14   activities with his brother to suggest Mr. Smith was adhering to a schedule or any evidence of

15   other transferable work skills. And, as noted above, the record shows Mr. Smith's attendance at

16   appointments to be unreliable. *See* AR 742, 750, 752, 757.

17         Finally, the record must contain affirmative evidence of malingering for an ALJ to reject

18   a claimant's self-reported symptoms on that basis. *Valentine v. Commissioner Social Sec.*

19   *Admin.*, 574 F.3d 685, 693 (9th Cir. 2009). Here the ALJ cited two notes in Mr. Smith's

20   treatment record—that "[Mr. Smith] seemed attached to the PTSD [diagnosis] perhaps for

21   secondary gains" and that he "seemed upset when therapist explained the limitations of ability to

22   recommend [Mr. Smith] not work as most of his disability is physical"—as a basis for rejecting

23   Dr. Irwin's entire opinion. AR 755-56. Those notes reflected a single doctor's impression in

24

25

ORDER - 12

1    November 2011, and the impression is limited to Mr. Smith being upset that his providers were

2    removing their PTSD diagnosis. Mr. Smith does not assert in this appeal that he suffers from

3    PTSD, and that condition is not at issue. Further, despite the ALJ's implication, the record

4    contains no evidence that Mr. Smith was malingering and the ALJ made no such finding. Mr.

5    Smith's frustration at a reduction in his chances of obtaining disability benefits is not by itself a

6    valid reason to reject medical opinions based partly on his self-reports. *See Cha Yang v. Comm'r*

7    *of Soc. Sec. Admin.*, 488 F. App'x 203, 205 (9th Cir. 2012) (unpublished) ("If a petitioner's desire

8    or expectation of obtaining benefits were by itself sufficient to discredit a claimant's testimony,

9    then no claimant would ever be found credible.").

10   C.    <u>Treating Physician: Dr. Phillips</u>

11          Dr. Phillips opined in a November 2012 letter that due to Mr. Smith's chronic back pain

12   and depression "we consider Mr. Mr. Smith to be totally disabled and unable to sustain full time

13   employment." AR 661. Dr. Phillips cited his health center's relationship with Mr. Smith since

14   July 2009, and his letter referenced a May 2012 neurosurgery note from Dr. Yoshihiro

15   Yamomoto. *Id.* Based on that note, Dr. Phillips referred to "extensive c-spine disease

16   documented on MRI, consistent with [Mr. Mr. Smith's] pain and neck stiffness." *Id.*

17          In Dr. Yamomoto's note, he recounted Mr. Smith's history of chronic neck and back pain

18   and shoulder spasms and his treatment using methadone, Vicodin, and several other medications

19   for pain and depression, and as muscle relaxers. AR 662-63. Dr. Yamomoto performed a

20   physical exam, finding "4/5 weakness of the deltoid, biceps, triceps and wrist extensor on the

21   right side," that Mr. Smith's right shoulder sits two inches below his left, that a sensory

22   examination showed "diffuse paresthesia in upper and lower limbs," that Mr. Smith's "[g]ait is

23   antalgic using a single-prong cane," and that his neck had a "severely limited" range of motion.

24   AR 663. Dr. Yamomoto also reviewed MRIs of Mr. Smith's spine from 2004 and 2005. He

25

1    observed C6-7 disc degeneration, collapsed disc space, Modic type II changes, lack of lordosis,

2    and right sided neuroforaminal stenosis likely due to disc osteophyte complex. *Id.* He observed

3    these findings were stable on both studies. *Id.* The 2005 study showed a small central disc

4    herniation at C5-6 that progressed since the 2004 study, generating mild central stenosis. *Id.* Dr.

5    Yamomoto diagnosed Mr. Smith with cervical spondylosis without myelopathy. *Id.* He opined

6    that "[i]t is unlikely [Mr. Smith] will benefit from neurosurgical intervention to become 'pain-

7    free'" and expressed concern that Mr. Smith had a "psychological issue, which is likely

8    generating intermittent shakiness and tremor" not explained by Dr. Yamomoto's exam. AR 664.

9          Later in May 2012, Dr. Yamomoto obtained a new cervical spine MRI from Dr. Jack

10   Fields. Dr. Fields found "moderate-to-advanced degenerative spondylosis throughout the

11   cervical segments, associated with reversal of the normal cervical lordosis" and "[r]eactive end

12   plate Modic edema, primarily at C6 and C7." AR 686. He further diagnosed "[m]ild central canal

13   stenosis at C5-6, secondary to annular bulge and small disc protrusion," and "[h]igh-grade

14   multilevel foraminal stenosis" at several vertebrae. AR 685-86.

15         In this Court's prior remand order, it found that the ALJ erred by rejecting Dr. Phillips's

16   opinion as unsupported without citing any conflicting objective medical evidence. AR 1006-07.

17   This Court also expressed doubt that the opinion Dr. Phillips gave—that Mr. Smith was unable

18   to work—was one reserved entirely to the Commissioner, as the prior ALJ found. AR 1007; *see*

19   *Hill v. Astrue*, 698 F.3d at 1160 (holding that doctor's opinion that Hill was "unlikely" to work

20   full time was a permissible "assessment, based on objective medical evidence, of Hill's

21   likelihood of being able to sustain full time employment given the many medical and mental

22   impairments Hill faces"). Because Dr. Phillips was assessing Mr. Smith's "likelihood of being

1   able to sustain full-time employment," the prior ALJ's reason for rejecting that opinion was

2   invalid. AR 1007.

3        Here, the ALJ again rejected Dr. Phillips's opinion, again finding it "not consistent with

4   the objective medical evidence." AR 901. The ALJ cited several observations in Dr.

5   Yamomoto's evaluation, including that Mr. Smith was "awake, alert, and oriented times three,"

6   had apparently intact speech and memory, had motor weakness in the upper right extremity, had

7   severely constrained range of motion in the neck, had no myelopathy and normal lower

8   extremity motor functions. *Id.*; *see* AR 663. The ALJ continued, "[n]owhere in the referenced

9   notes does [Dr. Yamomoto] suggest the claimant is disabled and Dr. Phillips' exam findings do

10  not show musculoskeletal findings that would support limitations. AR 901; *see* AR 663. Oddly,

11  the ALJ also cited as support Dr. Allison Huffman's opinion that Mr. Smith was not *mentally*

12  disabled. AR 901; *see* AR 755-56 (opining that "most of his disability is physical.").

13       The ALJ did not offer specific and legitimate reasons for rejecting Dr. Phillips's opinion.

14  Apparently to address the remand order's directive to cite specific conflicting medical evidence,

15  the ALJ cited several findings from Dr. Yamomoto's exam. But the ALJ's analysis lacks any

16  explanation of how those findings contradict Dr. Phillips's opinion that Mr. Smith was "unable

17  to sustain full time employment," and no such connection is apparent. AR 901; *see* AR 661. As

18  this Court concluded before, the ALJ could not reject that opinion solely on the basis that it was

19  reserved to the Commissioner. *See* AR 1007 (citing *Hill*, 698 F.3d at 1160). The ALJ thus

20  repeated the same error as the prior ALJ.

21       The ALJ further reasoned that Dr. Phillips's opinion was not consistent with Mr. Smith's

22  activities, but she did not specify what activities or how they were inconsistent with disability.

23  As discussed above, this is insufficient to justify rejecting a treating physician's opinion. *See*

24

25

1     *Trevizo*, 2017 WL 2925434, at *8. The ALJ thus erred in rejecting the opinion of Dr. Phillips

2     and, implicitly, the opinions of Dr. Yamomoto and Dr. Fields.

3     II.  The ALJ's Assessment of Mr. Smith's Subjective Claims

4         Questions of credibility are solely within the control of the ALJ. *Sample*, 694 F.2d at 642.

5     The Court should not "second-guess" this credibility determination. *Allen*, 749 F.2d at 580. In

6     addition, the Court may not reverse a credibility determination where that determination is based

7     on contradictory or ambiguous evidence. *See id.* at 579. That some of the reasons for discrediting

8     a claimant's testimony should properly be discounted does not render the ALJ's determination

9     invalid, as long as substantial evidence supports that determination. *Tonapetyan*, 242 F.3d at

10     1148.

11         To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

12     reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The ALJ "must identify what

13     testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also*

14     *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the

15     claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear

16     and convincing." *Lester*, 81 F.2d at 834. The evidence as a whole must support a finding of

17     malingering. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

18         Here, Mr. Smith testified with respect to his physical impairments that he suffers from

19     "unpredictable extreme pain" in his arms and back, in addition to constant "base-level pain". AR

20     929. He testified that pain limits his ability to hold objects, to fish, and to do chores. AR 936,

21     938, 940-41. He also testified that pain sometimes prevents him from sleeping for two days at a

22     time, and that this would keep him from showing up to work on a regular schedule. AR 940-41.

23         Because the ALJ made no finding that Mr. Smith was malingering, she was required to

24     offer "clear and convincing reasons" to discount Mr. Smith's statements. *Trevizo*, 2017 WL

25

1    2925434, at *9. The ALJ stated three reasons for rejecting Mr. Smith's testimony, none of which

2    are supported by the record.

3          The ALJ first found that objective evidence in the record is inconsistent with Mr. Smith's

4    "extreme allegations of physical pain and physical limitations." AR 895. She recited portions of

5    Mr. Smith's medical record. AR 895-96. She acknowledged that "the objective evidence . . .

6    show[s] that [Mr. Smith] has physical limitations," but she concluded that Mr. Smith's

7    "symptoms are addressed sufficiently with medication to allow for the above RFC."

8          This explanation fails because the ALJ did not "specifically identify any such

9    inconsistencies" between Mr. Smith's testimony and the medical record. *Brown-Hunter v.*

10   *Colvin*, 806 F.3d 487, 489 (9th Cir. 2015) (holding that ALJ erred in "simply stat[ing] her non-

11   credibility conclusion and then summarize[ing] the medical evidence supporting her RFC

12   determination"); *see Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir.

13   1999) ("[T]he ALJ did not specify what complaints are contradicted by what clinical

14   observations."). The ALJ's recitation of the medical record is not a specific, clear, and

15   convincing reason to discount Mr. Smith's pain testimony. *See Brown-Hunter*, 806 F.3d at 489.

16   "'[W]e may not take a general finding—an unspecified conflict between Claimant's testimony . .

17   . and her reports to doctors—and comb the administrative record to find specific conflicts.'" *Id.*

18   at 494 (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014)).

19         Instead of identifying conflicts between Mr. Smith's subjective statements and the

20   objective medical evidence, the ALJ summarized parts of the medical record that contain

21   apparently normal findings. *See, e.g.*, AR 495 ("no gross abnormality in his gait"), 587 (2009 x-

22   ray findings), 683 (no cervical myelopathy). Yet physicians made many objective findings that

23   are fully consistent with Mr. Smith's statements that he suffered debilitating pain. AR 495 (slow

24

25

1    in gait and "extremely slow" standing up, and imaging indicates degenerative disc disease), 683

2    (C-Spine MRIs from 2004 and 2005 showed disc degeneration, collapsed disc space, foraminal

3    stenosis, central disc herniation, and mild central stenosis; diagnosed cervical spondylosis

4    without myelopathy), 686, 695 (similar findings in 2012 MRI), 1448, 1460 (facet arthropathy

5    and moderate to severe cervical disc disease). The ALJ cited "[a] lack of musculoskeletal exam

6    findings," yet the record shows musculoskeletal exam results indicating an objective basis for

7    Mr. Smith's pain testimony. *See* AR 476 (finding scoliosis, left shoulder blade higher than right,

8    pain with cervical and lumbar ranges of motion, and rightward lumbar list). Therefore the Court

9    concludes that the record as a whole does not support the ALJ's reasoning. Instead, the record as

10    a whole shows Mr. Smith's statements do not conflict with the objective medical evidence.

11         The ALJ also pointed to "the conservative treatment" Mr. Smith received and "the

12    abundance of activities" he performed "despite his impairments." AR 896. The record does not

13    support these reasons, either.

14         The ALJ mentions a 2012 note form Dr. Brian Iuliano "recommend[ing] conservative

15    treatment," yet the ALJ did not actually describe the treatment Mr. Smith received. AR 896; *see*

16    AR 695. The record shows that Mr. Smith's treatment included prescriptions for numerous

17    medications for pain, including methadone and Vicodin. *See* AR 476-77 (noting discussion re

18    long-term use of methadone and referring Mr. Smith to pain clinic, 9/10/10). The record does not

19    support the ALJ's statement about "conservative treatment."

20         The ALJ focused primarily on Mr. Smith's activities to discredit his pain testimony. The

21    Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an

22    adverse credibility determination." *Orn*, 495 F.3d at 639. First, the ALJ may reject symptom

23    testimony if the claimant "is able to spend a substantial part of her day performing household

24

25

1    chores or other activities that are transferable to a work setting." *Smolen v. Chater*, 80 F.3d 1273,

2    1284 n.7 (9th Cir. 1996). The claimant need not be "utterly incapacitated" to be found disabled,

3    though, and "many home activities may not be easily transferable to a work environment." *Id.*

4    Under the second ground, the claimant's daily activities can "contradict his other testimony."

5    *Orn*, 495 F.3d at 639. Here, the record does not support either ground for rejecting Mr. Smith's

6    testimony based on his activities.

7         The ALJ cited another doctor's note that Mr. Smith was "looking into scuba diving." *See*

8    AR 895. The record does not indicate that Mr. Smith ever went scuba diving. And the ALJ

9    omitted that Mr. Smith was looking into scuba diving because it might be therapeutic without

10   aggravating his back pain. AR 413-14. "[D]isability claimants should not be penalized for

11   attempting to lead normal lives in the face of their limitations"—much less for talking about

12   attempting to lead normal lives. *See Reddick*, 157 F.3d at 722.

13        The ALJ also noted that Mr. Smith told Dr. Welch in November 2010 that he had

14   refinished some cabinets, and that his mother, Helene Adams, listed several physical activities

15   among his hobbies. AR 895; *see* AR 494, AR 1167. Ms. Adams listed light housework, errands,

16   shopping in stores, gathering berries and mushrooms, collecting fish worms, fishing 1-2 times

17   per week, going on short walks, and occasionally cooking. AR 1167. She also reported, however,

18   that Mr. Smith's normal activities caused "days of back pain and arm paralysis, shooting pains,

19   and headaches." AR 1163. Asked to describe his daily activities, she said he drank coffee,

20   smoked, watched TV, sat in the sun, performed light household tasks, surfed the internet, wrote,

21   planned, and ran errands. She said that cooking takes him "[a]ges" because he is "[o]ften in too

22   much pain to eat or stand" and often drops dishes or falls and cannot get up easily. AR 1165.

23   When he fishes, he cannot handle a boat himself. AR 1167; *see* AR 936 (Mr. Smith testified that

24

25

1    he spends 2-3 hours fishing depending on his arm pain). When he walks, he needs to stop and

2    rest every half mile. AR 1168.

3          Thus, to the extent Ms. Adams provided details about the nature, duration, or frequency

4    of Mr. Smith's leisure activities, she indicated that Mr. Smith's pain limited his ability to do

5    them. The ALJ did not discount Ms. Adams's testimony or cite reasons for doing so. AR 896,

6    906. With respect to Dr. Welch's note about refinishing cabinets, the record likewise contains no

7    information as to how long Mr. Smith performed that task or what it entailed. Thus, the activities

8    the ALJ cited do not show that Mr. Smith "is able to spend a substantial part of his . . . day

9    performing household chores or other activities that are transferable to a work setting." *Orn*, 495

10   F.3d at 639; *see Trevizo*, 2017 WL 2925434, at *8. The ALJ's error in rejecting Mr. Smith's

11   testimony on his physical symptoms provides an additional basis for reversal.

12         Mr. Smith also challenges the ALJ's rejection of his testimony regarding his mental

13   health symptoms. Because the Court finds that the ALJ decision should be reversed and, as

14   discussed below, that the case should be remanded for an award of benefits, the Court need not

15   reach this issue.

16   III.  <u>The ALJ's RFC Assessment</u>

17         The ALJ uses a claimant's residual functional capacity (RFC) assessment at step four of

18   the sequential evaluation process to determine whether the claimant can do his or her past

19   relevant work, and at step five to determine whether he or she can do other work. Social Security

20   Ruling (SSR) 96-8p, 1996 WL 374184 *2. The RFC is what the claimant "can still do despite his

21   or her limitations." *Id.*

22         A claimant's RFC is the maximum amount of work the claimant is able to perform based

23   on all of the relevant evidence in the record. *Id.* However, an inability to work must result from

24   the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those

25

1    limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing

2    a claimant's RFC, the ALJ must also discuss why the claimant's "symptom-related functional

3    limitations and restrictions can or cannot reasonably be accepted as consistent with the medical

4    or other evidence." *Id.* at *7.

5    The ALJ found Mr. Smith had the RFC:

6    **to perform light work as defined in 20 CFR 416.967(b) in that he can lift and**
**carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours in an**
7    **8 hour workday; and stand/walk for 2 hours in and [sic] 8 hour workday. He**
**can occasionally climb ramps and stairs; never climb ladders, ropes or**
8    **scaffolds; occasionally balance, stoop, crouch, crawl and kneel; and**
**occasionally reach overhead with the bilateral upper extremities. He must**
9    **avoid concentrated exposure to vibration and hazards. He can perform**
**simple, routine tasks that do not include public contact and only superficial**
10    **co-worker contact.**

11    AR 893 (emphasis in the original). But because as discussed above the ALJ erred in failing to

12    properly evaluate the medical opinion evidence or Mr. Smith's testimony on his physical

13    symptoms, the ALJ's RFC assessment cannot be said to completely and accurately describe all

14    of Mr. Smith's functional limitations. Accordingly, the ALJ erred here as well.

15    The ALJ found at step five that Mr. Smith could perform other jobs existing in significant

16    numbers in the national economy based on the vocational expert's testimony offered at the

17    hearing in response to a hypothetical question concerning an individual with the same age,

18    education, work experience, and RFC as Mr. Smith. AR 907-08, 954-55. Because the ALJ erred

19    in assessing Mr. Smith's RFC, the hypothetical question the ALJ posed to the vocational

20    expert—and thus that expert's testimony and the ALJ's reliance thereon—cannot be said to be

21    supported by substantial evidence or free of error.

22    IV.  Remand for Award of Benefits

23    The Court may in its discretion remand this case "either for additional evidence and

24    findings or to award benefits." *Smolen*, 80 F.3d at 1292; *Trevizo*, 2017 WL 2925434, at *13. The

25

1    Court should remand for additional proceedings where they "'can remedy defects in the original

2    administrative proceeding.'" *Trevizo*, 2017 WL 2925434, at *13 (quoting *Garrison*, 759 F.3d at

3    1019). In general, however, the Court should remand for an award of benefits where

4        "1) the record has been fully developed and further administrative proceedings
    would serve no useful purpose; (2) the ALJ has failed to provide legally

5        sufficient reasons for rejecting evidence, whether claimant testimony or
    medical opinion; and (3) if the improperly discredited evidence were credited

6        as true, the ALJ would be required to find the claimant disabled on remand."

7    *Id.* at *13 & n.11 (quoting *Garrison*, 759 F.3d at 1020).

8        The credit-as-true factors are satisfied here. Mr. Smith's case has been reviewed twice,

9    with two hearings before ALJs and two appeals to this Court. The record runs to nearly 1500

10   pages, and the Commissioner identifies no areas where further development would serve a useful

11   purpose. *See* Dkt. 19, p. 7; *Trevizo*, 2017 WL 2925434, at *13. As discussed above, the ALJ

12   failed to provide sufficient reasons to reject medical opinion evidence from Dr. Wingate, Dr.

13   Irwin, and Dr. Phillips, and Mr. Smith's testimony about his physical symptoms. Finally, if those

14   doctors' opinions and Mr. Smith's testimony were credited as true, the ALJ would be required to

15   find that Mr. Smith would be markedly limited in maintaining a workplace schedule, learning

16   new tasks, performing routine tasks without special supervision, adapting to changes in routine

17   work setting, completing a normal workday, or maintaining appropriate behavior in a workplace.

18   AR 511, 661, 1224. These limitations would mandate a finding of disability on remand, as the

19   vocational expert testified that a person who would be absent two days per month or off-task for

20   15 percent of an eight-hour workday could not sustain employment. Because all three credit-as-

21   true factors are met, the Court remands to the ALJ to calculate and award benefits.

22

23

24

25

1

<u>CONCLUSION</u>

2      Based on the foregoing discussion, the Court finds the ALJ improperly determined Mr.

3  Smith to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this

4  matter is REMANDED for an award of benefits.

5      Dated this 26th day of July, 2017.

6

7

8      *Theresa L. Fricke*
       _____

9      Theresa L. Fricke
       United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

ORDER - 23